Lew ANDERTON and Anderton
Development Partnership,
L.P., Appellants,

v.

William R. CAWLEY, Individually and
as Trustee of the Bill Cawley 1997 Re-
vocable Trust, Cawley–Cascade, GP,
L.L.C., Cawley–PB Funding, LP, Caw-
ley Finance, L.L.C., Cawley Finance
II, L.L.C., Bot Real Estate, L.L.C., Cot
Real Estate, L.L.C., Lonnie A. Ei-
chinger as Trustee of the Christopher
Cawley 1998 Irrevocable Trust, Lonnie
A. Eichinger as Trustee of the Kelly
Cawley 1998 Irrevocable Trust, and
Marcus D. Hiles, Appellees.

No. 05–10–00693–CV.

Court of Appeals of Texas,
Dallas.

Oct. 29, 2010.

D. Brent Lemon, Law Office of D. Brent
Lemon, Dallas, TX, Edward Slayton Cox,
The Cox Law Firm, Bedford, TX, for Ap-
pellants.

Mike A. Hatchell, Locke Lord Bissell &
Liddell LLP, Austin TX, Kirsten M. Cas-
taneda, Locke Lord Bissell & Liddell LLP,
James Robert Krause, Lawrence J. Fried-
man, Friedman & Feiger, L.L.P., Dallas,
TX, for Appellees.

Before Chief Justice WRIGHT and Justices O'NEILL and MYERS.

## OPINION

Opinion By Chief Justice WRIGHT.

Before the Court is appellant Lew Anderton's motion to decrease the amount of his supersedeas bond and accept notice of cash deposit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(d) (West 2008); TEX. R.APP. P. 24.4. The trial court rendered judgment awarding appellees $8,386,849.38. Anderton filed an affidavit of net worth reflecting a *negative* net worth of $6,557,571.43. In calculating his net worth, Anderton included the amount of the judgment as a liability. Anderton deposited $100 and served his notice of cash deposit in lieu of a supersedeas bond. Appellee BOT Real Estate, L.L.C. objected to Anderton's affidavit of net worth. The trial court found Anderton's net worth to be $1,890,168.77 and assessed the bond requirement at one-half of that amount. The issue before this Court is whether the trial court erred in excluding the judgment amount from Anderton's net worth.

Anderton contends the trial court erred in excluding the judgment amount from his net worth because it is: (1) contrary to the plain text of the statute; (2) contrary to the legislative intent; (3) contrary to the generally accepted accounting principles; and (4) contrary to the only credible evidence presented at the hearing. We review a trial court's determination of the amount of security for an abuse of discretion. *G.M. Houser, Inc. v. Rodgers,* 204 S.W.3d 836, 840 (Tex.App.-Dallas 2006, no pet.).

■ With regard to the amount of a bond that the trial court can set to supersede a judgment, section 52.006 of the civil practice and remedies code provides, in pertinent part, as follows:

(a) Subject to Subsection (b), when a judgment is for money, the amount of security must equal the sum of:

 (1) the amount of compensatory damages awarded in the judgment;

 (2) interest for the estimated duration of the appeal; and

 (3) costs awarded in the judgment.

(b) Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of:

 (1) 50 percent of the judgment debtor's net worth; or

 (2) $25 million.

TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(a) & (b) (West 2008). Appellate rule 24.2 states that the amount of the security must not exceed fifty percent of the judgment debtor's *current* net worth. TEX. R.APP. P. 24.2(a)(1)(A). Net worth is the difference between total assets and total liabilities as determined by generally accepted accounting principles. *See Rodgers,* 204 S.W.3d at 840. Contrary to Anderton's contention, the plain language of the statute does not include a contingent money judgment in calculating net worth.

■ Anderton contends the legislative intent of section 52.006 is to shift the focus away from protecting judgment creditors and instead to focus on allowing parties to appeal adverse judgments. If the sole focus was on allowing the judgment debtor to appeal, the legislature would not impose any supersedeas requirement. The legislature struck a balance. The thrust of the inquiry under section 52.006 is whether the judgment debtor has the ability to meet the supersedeas bond requirement and whether doing so is likely to result in substantial economic harm. *See Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 917 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

■ The trial court conducted a hearing on BOT Real Estate's contest to Anderton's affidavit of net worth. At the hearing, David Harris, C.P.A., testified on Anderton's behalf. Harris testified that a money judgment should be included on a balance sheet if: (1) the underlying litigation occurred on or before the date of the financial statement; (2) the likelihood of an unfavorable outcome is probable; and (3) the amount of the loss can be reasonably estimated. Harris then testified that Anderton's attorney told him that it was unlikely Anderton would win on appeal. Thus, he argued that the conditions were met for including the judgment as a liability for purposes of calculating Anderton's net worth.

BOT Real Estate presented the testimony of Dan Jackson, C.P.A. He testified that this judgment should not be included as a liability. Jackson stated that not including this judgment as a liability for net worth purposes is consistent with generally accepted accounting principles. Jackson also testified that Anderton's net worth could not be ascertained from his balance sheet because it did not include any documentation, calculations, descriptions, or valuations.

At the conclusion of the hearing, the trial court said that it was allowing further discovery with regard to Anderton's assets and noted that the bond may increase if the evidence shows that Anderton undervalued his assets. In its order determining Anderton's net worth, the trial court made the following findings of fact and conclusions of law:

1. The balance sheet attached to Lew Anderton's Affidavit of Net Worth filed August 25, 2010 is suspect.

2. Lew Anderton is uncertain as to whether or not all assets are listed on the balance sheet attached to Lew Anderton's Affidavit of Net Worth filed August 25, 2010.

3. The Court declines to include the amount of the judgment and interest entered in this case as a liability of Lew Anderton in determining his net worth because it would lead to the illogical result that Lew Anderton has a negative net worth, when the other information provided by Lew Anderton would otherwise show that he has a net worth of at least $1,890,168.77.

4. The Court accepts the testimony of Dan Jackson and finds that inclusion of the judgment and interest entered in this case as a liability of Lew Anderton in determining his net worth would not comply with generally accepted accounting principles.

5. While the Court finds that the balance sheet attached to Lew Anderton's Affidavit of Net Worth filed August 25, 2010 is suspect, the Court declines to ignore it altogether and finds that Lew Anderton's net worth is $1,890,168.77.

The trial court found Jackson's expert testimony credible. Jackson's testimony supports the trial court's determination. Accordingly, we conclude the trial court did not abuse its discretion in excluding the amount of the judgment from Anderton's net worth calculation. We affirm the trial court's determination as to the amount of the supersedeas bond and deny Anderton's motion to decrease the amount of his supersedeas bond and accept notice of cash deposit.